IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY F. CUMMINGS,                          )
                                           )
                        Plaintiff,         )        Case No:  18-CV-231-RAW
                                           )
vs.                                        )
                                           )
UNITED STATES POSTAL SERVICE               )
                                           )
                        Defendant.         )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

COMES NOW the Plaintiff, Mary F. Cummings (Pro se), submits this response in support of the opposition to the United States Postal Service's (hereinafter "USPS") Motion for Summary Judgment and Memorandum in Support Thereof [Dkt. 45] filed by the USPS, Defendant in this case.  Plaintiff states as follows:

### I. STATEMENT OF THE CASE

Plaintiff has filed a pro se Complaint, against the United States Postal Service (hereinafter "USPS") alleging various facts and causes of action set forth in 14 separate Counts.  The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Even giving all reasonable inferences to Defendants, the motion for summary judgment [Dkt. 45] is unsupported by the record.  Plaintiff responds in support of the opposition to the USPS Motion for Summary Judgment and Memorandum in Support Thereof, [Dkt. 45], to be denied.

## II.  RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  Plaintiff is a female, Cherokee Indian, and over the age of 50.  (Dkt. 1, General Factual Allegations, Pg. 4, #6) and (Defendant's Motion for Summary Judgment and Memorandum in Support Thereof, (hereinafter "Dkt 45") Statement of Material Facts not in Dispute, Pg. 1, #1).

2.  Plaintiff was employed by U.S.P.S. as a PMR Clerk at Whitesboro, Ok., PSE Clerk at Howe, Ok., and a PTF Clerk at Vian, Ok. from 7-12-2014 to 7-25-2016, until her separation on 7-25-2016.  ("Dkt. 45") Statement of Material Facts not in Dispute, Pg. 1, #2) & (Dkt. 1, General Factual Allegations, Pg. 4, #1).

3.  Plaintiff was covered under the Collective Bargaining Agreement between the Postal Service and the American Postal Workers Union, dated May 21, 2015 to September 20, 2018. (Defendant's Response to Plaintiff's First Discovery Requests, Interrogatory No. 7, attached hereto as, Ex. 1, Pgs. 1-9).  (Complaint, (hereinafter "Dkt. 1") General Factual Allegations, Pg. 4, #2).

4.  The "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel" was signed on July 29, 2016, and it was in reference to the May 21, 2015 to September 20, 2018 Collective Bargaining Agreement between the Postal Service and the American Postal Workers Union, that was effective July 8, 2016. (Defendant's Response to Plaintiff's First Discovery Requests, Interrogatory No. 4 and No. 5, attached hereto as, Ex. 1, Pg. 3) and (Dkt. 1, Count 1, Wrongful Discharge, Pg. 4, #9).

5.  Plaintiff had never been written up for disciplinary reason's between 7-12-2014 through 5-13-2016, which includes misconduct and work performance. (Defendant's Response to Plaintiff's Request for Admissions, Admissions No. 1, attached hereto as Ex. 2, Pgs. 1-5) & (Dkt. 1, General Factual Allegations, Pg. 4, #3).

RESPONSE TO DEFENDANT'S:  Claim of Wrongful Discharge, Breach of the Collective Bargaining Agreement and Breach of the Clerk Craft Questions & Answers (Counts 1, 2, & 3)

6.  Plaintiff was employed by the United States Postal Service from 7-12-2014 through 7-25-2016. (Ex. 1-14, PS Form 50 dated 7-12-2014 through 7-25-2016).

7.  On 1-10-2015, Plaintiff filed Oklahoma Unemployment.  (Oklahoma Employment Security Commission Payment Information, Ex. 3) and (Standard Form 8, Ex. 4).

8. On or about 2-11-2015, Plaintiff was placed on her bid job at Howe, Ok. as a PSE, Sales and Services/Distribution Associate.

9.  Plaintiff worked at Howe, Ok. from on or about 2-11-2015 through 5-13-2016. (PS Form 50, attached hereto as, Ex. 5, Pgs. 1 - 14)

10.  On 5-14-2016, Plaintiff bid in at Vian, Ok. as her preference for a Part-Time Flexible (PTF) Position.  (PSE Clerk Preference - Conversion to Career, Ex. 6).

11.   Upon conversion, Plaintiff had already served her 90-day probationary period under the "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel" Agreement dated July 29, 2016, Q & A 14 ("Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel", attached hereto as, Ex. 7).

12.  Defendant admitted in their "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss" [Doc. 18, Page 2, first paragraph], that Plaintiff was terminated under the CBA dated May 21, 2015 to September 20, 2018.  Defendant also admits in their Response to Plaintiff's Interrogatory No.4, that the "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel" signed on 7-29-2016, was in reference to the Collective Bargaining Agreement dated May 21, 2015 to September 20, 2018 that was in effect. The CBA dated May 21, 2015 to September 20, 2018 is effective as of July 8, 2016. ("PREAMBLE", attached hereto as, Ex. 8) and (Defendant's Response to Plaintiff's First Discovery Requests, Interrogatory No. 5, Ex. 1).  Plaintiff was not separated till July 25, 2016. Which comes after the effective date of the new CBA dated May 21, 2015 to September 20, 2018.  Under preponderance of the evidence, the "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel" signed on 7-29-2016, was to be used as further clarification and guidance for the CBA that Plaintiff was separated under. And Plaintiff filed grievances after 7-29-2016, which was within the time limit of 14 days to file.  So Plaintiff was covered under the "Clerk Craft Q & A, signed on 7-29-2016.  This "Clerk Craft Q & A signed on 7-29-2016 was for clarification and for reference for the CBA that went into effect on July 8, 2016, which Plaintiff was separated under. Also, the "Clerk Craft Q & A, signed on 7-29-2016 did not have an effective

date, it was signed on this date to be used for interpretation of the new CBA that just went into effect on July 8, 2016.  Plaintiff filed her grievances on 8-2-2016.

13.  Plaintiff also did not have to serve an additional 90-day probationary period at the time she bid in at Vian, Ok. pursuit to the Code of Federal Regulations for federal employees, 5 C.F.R. 315.801 and 5 C.F.R. 315.802.  (5 C.F.R. 315.801, attached hereto as, Ex. 9  and 5 C.F.R. 315.802, attached hereto as, Ex. 9).

14.  Article 12 did not apply to Plaintiff. Plaintiff was not a new employee. Plaintiff had already served one full term as a PSE, prior to her separation. (PS Form 50, Ex.5, Pgs. 3-11), and pursuit to 39 U.S.C. 1005(a)(4)(A)(ii)(II). Defendant admits in (Dkt. 45, Pg. 2, #11).

15.  The POStPlan Agreement was applicable to Plaintiff cause this Agreement did not have an effective date, it was Questions and Answers as further clarification and guidance on issues that arise from the Collective Bargaining Agreement dated May 21, 2015 to September 20, 2018 that was effective July 8, 2016.

RESPONSE TO DEFENDANT'S:  Claim of "Fraudulent Misrepresentation"
    (Count 4)

16.  See Response for Milosav's Supervision of Plaintiff

RESPONSE TO DEFENDANT'S:  Plaintiff Filed to File Formal Claims of Race,
    Sex, Age, and Reprisal (Counts 5 and 6)

17.  Plaintiff filed the Information for Pre-complaint Counseling on 8-23-16 with the EEOC with the U.S. Postal Service, mailing it certified mail and a return receipt for proof of delivery.  EEOC signed and received it on 8-25-16.  (Cert. mail receipt/with return receipt, Pre-complaint Counseling for sex, race, and age discrimination, another one filed the same time for retaliation for my participation in protected EEO activity attached hereto as Ex. 10, Pgs. 1 - 12).
    Plaintiff had filed two complaint's at this time.  One complaint for Race, Age, and Sex Discrimination.
    The second complaint for Retaliation for my participation in protected EEO activity.  This complaint was the only one assigned a case number.  It was assigned 4G-730-0058-16.
    Plaintiff received a "Notice of Right to file Individual Complaint" on or about 9-19-16.

Page 4

On 10-04-16, Plaintiff faxed to number 202-663-7022, a "Notice of Intent to Sue" letter to the Office of Federal Operations, as instructed to do on her "Allegations of Discrimination Based on Age" under section B. (proof of fax confirmation from the Wister Library hereto as Ex. 11).

Plaintiff filed the Information for Pre-complaint Counseling on 10-10-17 with the EEOC with the U.S. Postal Service, mailing it certified for proof of delivery.  EEOC received it on 10-16-17. (Cert. mail receipt, Pre-complaint Counseling for race, sex, age discrimination, employment discrimination, obstructing competition, violating their own hiring practices, equal employment opportunities, attached hereto as Ex. 12, Pgs. 1 - 6).

Plaintiff alleged discrimination based upon Race, Age, and Sex, and violation of "Title VII of the Civil Rights Act of 1964", violation of hiring practices, violation of the "Four-Fifths Rule" against hiring minority applicants, employment discrimination, intentional discrimination "Prima facie", obstructing competition, and Equal Rights.

This case was assigned to case number 4G-730-0002-18.

Plaintiff received a "Notice of Right to File Individual Complaint" on or about 10-31-17.  (Notice of Right to File Individual Complaint, Allegations of Discrimination Based on Age, attached hereto as Ex. 13, Pgs. 1 - 3).

On December 14, 2017, Plaintiff faxed to 202-663-7022, a "Notice of Intent to Sue" letter to the Office of Federal Operations, as instructed to do on her "Allegations of Discrimination Based on Age" under B section.  (proof of fax confirmation from the Wister Library hereto as Ex. 14, Pgs. 1 - 2).

**RESPONSE TO DEFENDANT'S:  Plaintiff's Discrimination Claim**

18.  Plaintiff did file a "Notice of Intent to Sue" letters in both cases to the EEOC, by faxing them to 202-663-7022. One fax done on 10-04-16, (proof of fax confirmation from the Wister Library hereto as Ex. 11) and was done in [Dkt. 17, Ex. 10]; the other fax done on 12-14-17, (proof of fax confirmation from the Wister Library hereto as Ex. 14, Pgs. 1 - 2) and was done in [Dkt. 17, Ex. 13].  Plaintiff's Allegations of Discrimination Based on Age sheet (Ex. 10, pg. 8), states, "Notices of Intent to Sue must be mailed to the EEOC at the following address, or delivered to, or faxed to 202-663-7022. Plaintiff did the 3rd option as instructed.

**RESPONSE TO DEFENDANT'S:  Milosav's Supervision of Plaintiff**

**19.  While Plaintiff was employed at the Vian Post Office, Carla Milosav O'dell (hereinafter "Milosav") was the Postmaster that was supervising Plaintiff.**

**20.  In Defendant's Motion for Summary Judgment and Memorandum in Support Thereof, (hereinafter "Dkt. 45"), lines 24 and 25, Defendant states that Plaintiff was argumentative, difficult, slow, and inefficient.  But in discovery, Defendant could not produce evidence for these "hearsay" comments, or demonstrate evidence. Defendant did admit in their Response to Plaintiff's Request for Admissions (Defendant's Response to Plaintiff's Request for Admissions, attached hereto as Ex. 2, Pg. 3), Admission No. 12, that the referenced notes supposedly written up by Milosav, may be considered hearsay. In Defendant's "Dkt. 45", line 26, and (Ex. 2, Pg. 1, Admission No. 1), Defendant admits that Plaintiff had never been written up for disciplinary reason's between 7-12-2014 through 5-13-2016, which includes misconduct and work performance.  Erroneous, how Plaintiff's job performance went from good to did not meet job expectations for Milosav at the Vian Post Office within a 2 week span.  (Separation Letter, attached hereto as Ex. 15), and the (Employee Evaluation and/or Probationary Report, PS Form 1750, attached hereto as Ex. 16),  completed by Milosav on 6-13-2016 after observing/evaluating Plaintiff's work performance for 2 weeks. This 2 weeks evaluation violates the U.S.P.S. Handbook, ELM-584.52, which states that the first Performance Evaluation wii be conducted at the end of 30 days, not 2 weeks. (U.S.P.S. Handbook, ELM-584.52, attached hereto as Ex. 17).**

**RESPONSE TO DEFENDANT'S:  Plaintiff's Non-Selection in Whitesboro**

**21.  Plaintiff was the only person that had applied for this job up for bid on 1-02-2017.  The Whitesboro Post Office was the first postal job the Plaintiff had worked.  She worked this office from 7-12-2014 through 1-09-2015. (Ex. 5, Pgs. 1 - 2).**

**22. Pursuant to the Postal Service's Rule of Three, (U.S.P.S. Handbook, ELM-312, 344.4-Rule of Three, attached hereto as Ex. 18, Pgs. 1 - 5), does not state anywhere that the highest score gets selected/appointed the job.  The top three highest scores is invited to be interviewed for the position.  (U.S.P.S. Handbook, ELM-312, 344.1, attached hereto as Ex. 19).**

**23. The veteran, Aaron, that was selected for the Whitesboro Post Office, on or about 1-02-2017, did not bid for this job on the Postal Website before the bulletin closed.**

24. In Plaintiff's Complaint, ("Dkt. 1" Count 10, Prohibited Personnel Practices, Pg. 19, #128), plaintiff had received an email as the result of this interview for the job at Whitesboro, Ok. In this email it states, "A review of your application for this position determined that you do not meet the eligibility or suitability requirements listed on the vacancy announcement. Therefore, you will not receive further consideration for this vacancy." (Letter for not meeting eligibility, or suitability for government employment hereto as Ex. 20). In writing this letter, or email to plaintiff, the U.S.P.S. had violated the ELM Handbook for the Postal Service, and their Employee and Labor Relations Manual. In Determining Eligibility and Suitability by not sending plaintiff a request for Applicant's Comments concerning derogatory information. Giving the plaintiff an opportunity to comment on the information. And in making suitability determinations, The U.S.P.S. was in violation of the following Codes for Federal Regulations: (5 C.F.R. 731.202), (5 C.F.R. 731.203), (5 C.F.R. 731.402).

RESPONSE TO DEFENDANT'S:  Plaintiff's Non-Selection in Howe

25. Plaintiff was the most qualified for the job at Howe, Ok. Plaintiff worked this position from on or about 2-11-15 through 5-22-16. Defendant requested a Background check on Plaintiff for this position. Background check came back good. (Background check requested from the Defendant on 8-17-2017, completed on 8-18-2017, attached hereto as Ex. 21, Pgs. 1 - 3). Defendant did the Background check without making a job offer, or conditional offer of appointment to the Plaintiff, which violates the Code of Federal Regulations (5 C.F.R. 731.103). The postal service initiates a background check when hiring an employee for any position. (Defendant's Response to Plaintiff's First Discovery Requests, Ex. 1, Pg. 6, Interrogatory No. 9). Defendant selected another candidate with a lower score than the Plaintiff, or Defendant would not have requested a Background check on the Plaintiff. The selected candidate did not have postal experience, Plaintiff did.

26. As Plaintiff stated above, Pursuant to the Postal Service's Rule of Three, (Ex. 18) does not state anywhere that the highest score gets selected/appointed the job. The top three highest scores is invited to be interviewed for the position. (Ex. 19). The Defendant did not fill the Howe, Ok. job correctly pursuit to the U.S.P.S. Handbook, ELM-312, 311.11. (U.S.P.S. Handbook, ELM-312, 311.11, attached hereto as Ex. 22).

**RESPONSE TO DEFENDANT'S:  Plaintiff's Non-Selection in Muse**

**27.** Postmaster, Pamela Freeman, did not interview Plaintiff for the position at Muse, Ok.  Postmaster did not perform an interview with the Plaintiff.  So therefore, Plaintiff cannot be judged on this action of how well she interviewed.

**RESPONSE TO DEFENDANT'S:  Plaintiff's all Non-Selection's**

**28.** This section is in reference to Defendant's Motion for Summary Judgment, lines 32 - 48.  Defendant's reasons of not Hiring/Rehiring Plaintiff are pretext. Reason's made up to look legal and legitimate.  They are not the true or correct reasons.  Defendant's actions were discriminatory, and Defendant did not have "just cause" for separating  plaintiff from her employment. As stated in her complaint, [Dkt.1, Pg. 4, #2], and [Dkt.1, Pg. 6, #26]. Defendant was well aware of their internal behavior of not hiring/rehiring plaintiff. Plaintiff was on the "Do Not Rehire" list since her separation.  (See Defendant's Supplement to Plaintiff's First Discovery Requests for Production of Documents, attached hereto as, Ex. 23, Pgs. 1 - 5).  Defendant running Plaintiff all over the State of Oklahoma for fake and bogus interviews.  As stated in Plaintiff's Complaint,  lines #96, #97, #128, #141.

**RESPONSE TO DEFENDANT'S:  Plaintiff's Claim for Violation of Civil Rights**
      **of the United States Constitution.  (Count 7)**

**29.** First Admendment Rights under the United States Constitution, Freedom of Speech.  [Dkt. 1, Pg. 10, #59] speaks for itself with cause of action.

**30.** Fifth Admendment Rights under the United States Constitution, Due Process, Plaintiff was deprived of due process, when the USPS separated her.  Plaintiff was not given the opportunity to present a defense against her separation. [Dkt. 1, Pg. 21, #149].  Plaintiff's separation letter was in error, or incomplete which caused plaintiff "No due process".  The separtion letter did not provide any information on appeal rights, or "due process" in any way.  [Dkt. 1, Pg. 22, #157], (Ex. 15).

**31.** Due Process refers to the steps that Government must take to ensure fairness before depriving a citizen of life, liberty, or propery.  Due Process is guaranteed by the U.S. Constitution and applies to public employment in which the Government has established that there must be a cause to remove or suspend an individual.  See Gilbert v. Homar, 520 U.S. 924, 935-36 (1997) (suspension); Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541 (1985) (removal).

32. The U.S.P.S. interferred intentionally with the due process of plaintiff's separation by misleading the union, that plaintiff could not file and did not have access to the grievance procedures in her separation letter, (Ex. 15). Separation letter was inadequate.

33. Fourteenth Admendment Rights under the U.S. Constitution, Equal Rights, [Dkt. 1, Pg. 11, #61 - #66].

RESPONSE TO DEFENDANT'S:  Plaintiff's Claim for "Federal Employment/ Hiring Scandal", Count 8 and "Abuse of Discretion," Count 13

34. In Plaintiff's Complaint, [Dkt. 1, Pgs. 11 - 15, #67 - #103] and [Dkt. 1, Pg. 25, #178 - 181] states cause of actions for both counts.  Giving all reasonable inferences to Defendants, the motions for summary judgment are unsupported by the record.

RESPONSE TO DEFENDANT'S:  Plaintiff's Claim for "Harassment/Hostile Work Environment" (Count 9)

35. Plaintiff was not required to file an informal complaint.

36. In Plaintiff's Complaint, these actions, [Dkt. 1, Pgs. 16 - 17, #104 - #121], interwined with other counts that lead up to plaintiff's wrongful discharge. Theses claims for Harassment/Hostile Work Environment is also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, [Dkt. 1, Pg. 2, Count 5], (42 U.S.C. 2000e et seq.), (42 U.S.C. 1981), (42 U.S.C. 1988).  In Plaintiff's Complaint, [Dkt. 1, Pgs. 16 - 17, #104 - #121], Count 9 actions are in violation of (39 U.S.C. 1004).

RESPONSE TO DEFENDANT'S:  Plaintiff's Claim for "Prohibited Personnel Practices-Conspiracy-Failure to Rehire/Refuse to Hire," Count 10, and "Harmful Procedural Error," Count 11

37. Plaintiff has experienced, while being emloyed at the U.S.P.S., many prohibited personnel actions that are in violation of the law.  These causes of actions are in plaintiff's complaint [Dkt. 1, Pgs. 18 - 20, #122 - #130] that are in violation of the United States Codes, and in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended.

38. A civil rights conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  Diaz-Bigio v.

Municipality of San Juan, 2009 U.S. Dist. LEXIS 100841 (D.P.R. Oct. 28, 2009).

39. Plaintiff has experienced internal Conspiracy within the U.S.P.S., [Dkt. 1, Pg. 20, #131 - #136] which interwinded with other counts that lead lead up to plaintiff's wrongful discharge. These claims for "Conspiracy", are also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, and the United States Codes, (18 U.S.C. 371).

40. In Plaintiff's Complaint, (Dkt.1, Pgs, 21 - 22, #137 - #153), are actions that interwinded with other counts that lead up to plaintiff's wrongful discharge. These cause of actions for "Failure to Rehire/Refuse to Hire" are also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, the United States Codes, and the Codes of Federal Regulations.

41. Defendant committed "Harmful Procedural Error" when it violated the "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel, (Ex. 7). In this Q & A, question 14, states, "Clerk Craft PSE's who have already served one full term as a PSE will not be required to serve a probationary period as required by Article 12, Section 1, after conversion to career." This Q & A was in reference to the Collective Bargaining Agreement, dated May 21, 2015 - September 20, 2018, the only active clerk's agreement at the time it was signed by the United States Postal Service and the American Postal Workers Union, AFL-CIO on 7-29-2016.  [Defendant's Response to Plaintiff's First Discovery Requests, Pg. 3, Interrogatories No. 4]. It was used for clarification, and guidance on issues related to the Clerk Craft, Collective Bargaining Agreement, dated May 21, 2015 - September 20, 2018.

42. "Harmful Procedural Error's" was also committed in other ways, as stated in Plaintiff's Complaint [Dkt. 1, Pgs. 22 - 24, #154 - #172].

RESPONSE TO DEFENDANT'S:  Plaintiff's Claim of "Property Interest"
   (Count 12)

43. Plaintiff states in her complaint, #174, "Plaintiff being a government employee, feels she has a property interest in her job due to the CBA. It guarantees her a job status.  Which should give her a right to due process. Also, Plaintiff's property interest is in the United States Codes as a government employee, pursuant to (39 U.S.C. 1001(b)), and (42 U.S.C. 1981).

44. Civil Service employees have a property right in their continued employment. See Stone v. F.D.I.C., 179 F.3d 1368,1375 (Fed. Cir. 1999) (citing King v. Alston, 75 F.3d 657, 661 (Fed. Cir. 1996)).

45. Plaintiff also states under Property Interest, Count 12, [Dkt. 1, Pg. 24, #176], "Plaintiff has property interest in her job per the "CBA", (MOU of the CBA, pg. 274, Re: Layoff Protection, attached hereto as Ex. 24), and (Article 6, C,1, attached hereto as Ex. 25). Gives Plaintiff protection. Plaintiff should have already been recalled.

RESPONSE TO DEFENDANT'S: Plaintiff's Claim of "Fraudulent Concealment" (Count 14)

46. In Plaintiff's complaint, [Dkt. 1, Pgs. 25 - 26, #182 - #185], are actions of fraudulent concealment pursuant to (39 U.S.C. 1002) and (5 C.F.R. 731.203) and the United States Constitution.

### III. Legal Standards

#### A. Standard for Summary Judgment under Rule 56

Summary judgment shall be denied "[i]f there are...genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and makes inferences in the light most favorable to the non-movant. Kerber v. Qwest Group Life Ins. Plan, 647 F.3d 950, 959 (10th Cir. 2011). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party" on the issue.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986)).  Although the court views the evidence and draws

reasonable inferences therefrom in the light most favorable to the

nonmoving party, the "nonmoving party must present more than a

scintilla of evidence in favor of his position."  Id. (quoting Ford v. Pryor,

552 F.3d 1174, 1177-78 (10th Cir. 2008)).

**B.  Exhaust Administrative Remedies**

Exhaustion of administrative remedies, however, "is not a jurisdictional

prerequisite to suit in federal court" but is like a statute of limitations-

"subject o waiver, estoppel, and equitable tolling."  Zipes v. Trans World

Airlines, Inc., 455 U.S. 385, 392, 102 S. Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

To file suit under Title VII, the claimant must first file a charge with the

EEOC within 300 days of the alleged unlawful employment practice,

(42 U.S.C. 2000e-5(e)(1).  In assessing the timeliness of Plaintiff's Title VII

claims, the courts should consider in Mandel v. M & Q Packaging Corp.,

No. 11-3913, 2013 WL 141890 (3d Cir. Jan. 14, 2013), the District Court

determined that the EEOC questionnaires were sufficiently similar to a

charge to toll the statute of limitations and, therefore her claims would be

timely so long as they occurred within 300 days of December 18, 2018, i.e.,

after Feb. 22, 2018.

The court decided that Rule 56 was not the proper vehicle for challenging exhaustion, especially as the movant in such a challenge is not seeking a judgment on the merits, but instead resolution of a condition precedent to suit. Id. See Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003). A Rule 56 motion for summary judgment is not the proper way to challenge exhaustion. See Sterling v. Warden Hugh Smith.

C. Standards Governing Discrimination Under Title VII and the ADEA

Pursuit to Title VII of the Civil Rights Act of 1964, intentional and unintentional discrimination is prohibited. Plaintiff claims in Count 6 of her complaint a cause of action for disparate-treatment discrimination. Plaintiff has established evidence of disparaging remarks made by her employer suggesting stereotypical views about particular racial, sex, and age. See e.g., Price Waterhouse v. Hopkins, 490 U.S. 228, 235 (1989) (presenting strong evidence of sex stereotyping); James O. Castagnera & Edward S. Mazurek, Sex Discrimination Based Upon Sexual Stereotyping 53 AM. JUR. TRIALS 26 (2004). See Plaintiff's Complaint, [Dkt. 1, Pg. 8, #45 and #46]. Also, differential treatment that suggests the employer did not give her the same chances it gave to other employees. See e.g., Garrett v. Hewlett-Packard, 305 F.3d 1210, 1217 (10th Cir. 2002). See Plaintiff's Complaint, [Dkt. 1, Pg. 8, #41, #46]; [Dkt. 1, Pg. 9, #51].

had satisfactory work performance between 7-12-2014 through 5-13-2016.

(Defendant's Response to Plaintiff's Request for Admissions attached

hereto as Ex. 2, Pg. 2, Admissions No. 5).

## IV. ARGUMENT

1. **This Court has Subject Matter Jurisdiction for Plaintiff's Claims of Wrongful Discharge, Breach of the CBA and Breach of the POStPlan Agreement (Counts 1, 2, and 3)**

   A. **Plaintiff was not on Probation at the Time of Separation and was Eligible to File a Grievance Pursuant to the CBA**

Plaintiff was employed by U.S.P.S. as a PMR Clerk at Whitesboro, Ok., PSE

Clerk at Howe, Ok., and a PTF Clerk at Vian, Ok. from 7-12-2014 to 7-25-2016, until

her separation on 7-25-2016. ("Dkt. 45") Statement of Material

Facts not in Dispute, Pg. 1, #2) & (Dkt. 1, General Factual Allegations, Pg. 4, #1).

Plaintiff worked for the U.S.P.S. without a single break in service that

exceeded more than 30 calendar days. Defendant has misconstrued, or

misinterpreted the term "Probationary Employee", pursuant to the

Code of Federal Regulations for federal employees, (5 C.F.R. 315.802

(a)(b)(b1)(b2)(b3)), as stated in Plaintiff's Complaint #18 and #20.

Plaintiff was reassigned/converted employee, from a PSE Clerk to a PTF

Clerk on 5-14-2016. This personnel action was after Plaintiff had completed

her probationary period of 1 year. Under the clerks, CBA, the definition for

a converted/conversion employee is "The act of changing the status of a

part-time flexible employee to full-time regular by appropriate personnel

action. (PS Form 50), per Article 37, Section 1(l). (Article 37, CBA, attached

hereto as Ex.26). This additional 90-day probationary period was in

violation of the Code of Federal Regulations for federal employees,

(5 C.F.R. 315.801 (b)(2), as stated in Plaintiff's Complaint #18 and #21.

Defendant fails to state in Article 12, Section 1.A of the CBA states,

"The probationary period for a NEW employee shall be ninety (90)

calendar days." (Article 12, Section 1.A, CBA, attached hereto

as Ex. 27). Plaintiff was an employee of 2 years of service, not

a NEW employee.

In "The American Postal Worker Magazine, July-August 2016 issue",

it states, "Incorporates successful MOU "Re: Filling of Residual

Vacancies into the contract, several New pecking order's on conversion

of PSEs, New language in Article 37.5.D that streamlines process for

PSE conversion to career." (Postal Worker Magazine copy, July-

August 2016, issue, and page 7 of the magazine with the Arbitration

Award for the clerks attached hereto as, Ex. 28). This new

language in Article 37.5.D included Plaintiff. It states, "Any PSE

who fails to fqualify under this opportunity will remain in a PSE status,

with the same relative standing, for future conversion opportunities."

(Article 37.5.D.3 attached hereto as, Ex. 29). Also, Article 37.5.A.4,

states, "Part-time flexible employees who have exercised

a preference and fail to qualify shall not be discharged or disciplined

as a result of such failure." (Article 37.5.A.4, attached hereto as, Ex. 30),

and (Plaintiff's PSE Clerk Preference - Conversion to Career,

attached hereto as, Ex. 6).

Article 15, Grievance-Arbitration Procedure of the CBA, states, "that

any employee has 14 days to file a grievance from the date the Union

first became aware of (or reasonably should have become aware of)

the facts giving rise to the grievance to initiate a grievance at Step 1."

(Article 15, attached here to as Ex. 31).

Article 6.C.1, Layoff and Reduction in Force, states, "Definition. The

term "layoff" as used herein refers to the separation of non-protected,

non-preference eligible employees in the regular work force because

of lack of work or other legitimate, non-disciplinary reasons."

(Article 6.C.1, attached hereto as Ex. 32).

Under the Memorandum of Understanding (hereinafter "MOU"), Re:

Layoff Protection, states, "Each employee who is employed in the

regular work force as of July 8, 2016, and who has not acquired the

protection provided under Article 6 shall be protected henceforth

against any involuntary layoff or force reduction during the term

of this Agreement. It is the intent of this "MOU" to provide job

securiy to each such employee during the term of this Agreement;

however, in the event Congress repeals or significantly relaxes the

Private Express Statutes this Memorandum shall expire upon the

enactment of such legislation. (MOU, Re: Layoff Protection,

attached hereto as Ex. 24).

Article 6.G., Intent, states, "The Employer shall not lay off, reduce in force, or take any other action against a non-protected employee solely to prevent the attainment of that employee of protection status." (Article 6.G., attached hereto as Ex. 33).

Article 16, Section 1.  Discipline Procedure-Principles, states, "In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive.  No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations.  Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement.  Which could result in reinstatement and restitution, including back pay." (Article 16, Section 1, attached hereto as Ex. 34).

Only the following Memorandums of Understanding from the 2015 National Agreement shall apply to PSEs:

    a) **Use of Privately Owned Vehicles**
    b) **Leave Sharing**
    c) **Leave Without Pay**
    d) **Time Limitations Concerning Bone Marrow, Stem Cell,**

Blood Platelet, and Organ Donations
    e)  Removal of Social Security Number References
    f)  Residual Vacancies - Clerk Craft, (MOU, Re:  Residual
        Vacancies - Clerk Craft , attached hereto as Ex.
    g)  Assignment of PTF Hub Clerks
    h)  Purge of Warning Letters

All the above Articles from the CBA, is evidence for plaintiff's

Complaint, Count 1, Count 2, Count 7 - Fifth Amendment -

Due Process, Count 12, and that plaintiff was not on probation

at the time of separation as stated in her complaint filed on

July 24, 2018.

Here is a timeline to prove that plaintiff was not on probation at

the time of her separation:

1)  The CBA plaintiff was covered under was dated May 21, 2015
to September 20, 2018, which Defendant agrees (Dkt. 18, Pg. 2),
and has not refuted this evidence.

2)  The "Clerk  Craft Questions and Answers" was signed on
July 29, 2016 to further clarify issues in regards to the CBA,
dated May 21, 2015 to September 20, 2018, which was effective
as of July 8, 2016.

3)  Plaintiff was separated on July 25, 2016, which is after
the effective date of the CBA.  From this separation date, (Article
15, attached hereto as Ex. 31) from this CBA, gives plaintiff
14 days to file a grievance.

4)  The CBA, Article 6.F.1., states, "The interpretation and
application of the provisions of this Award shall be
grievable under Article 15.  Any such grievance may be
introduced at the Regional level and shall be subject
to priority arbitration."  (Article 6.F.1., attached hereto as
Ex. 35).

5)  Under Article 6.F.1, makes the "Clerk Craft Questions and
Answers" accessible to clarify that plaintiff was not on a

Page 18

"probationary period" at the time of separation.

6)  Under Article 15 of the CBA, Plaintiff still had 10 days after
the signing of the "Clerk Craft Questions and Answers"
to file a grievance.

7)  When Defendant signed the "Clerk Craft Questions and
Answers" just gave plaintiff double clarity along with
Article 6.F.1., which was effective July 8, 2016.

8)  Defendant's notified Postmaster's by email of the "Clerk
Craft Questions and Answers" being signed on July 29, 2016,
and the following business day is when plaintiff was
separated, which is also in violation of the CBA, Article 6.G.
(Article 6.G., attached hereto as Ex. 33).

   Plaintiff did have cause of action under the CBA, and cause of action

for breach of the CBA, which there is claim over which this Court

has subject matter jurisdiction.

   B.  Any Potential Hybrid Claim Under the CBA is Time-Barred

   Claims that comprise essentially two causes of action, one against

the Postal Service, the employer, for breaching provisions of the

applicable CBA and one against the Union (APWU) for breaching its duty

of fair representation are together referred to as a "hybrid" suit.  See

Bowen v. United States Postal Service 459 U.S. 212, 218, 103 S.CT. 588,

74 L.Ed.2d 402 (1983).  Plaintiff's claims do not constitute a "hybrid action".

Plaintiff brings this suit as a third-party beneficiary to the "CBA" against

the United States Postal Service only, not the Union (APWU).  As stated

in her "General Factual Allegations" #4 in this complaint.

   Defendants characterize Plaintiff's claims as a hybrid suit, in which

her claim against the United States Postal Service (USPS) is inextricably interdependent with her claim against the USPS for breach of the "CBA", based on her termination, or wrongful discharge.  There is no claim against the Union (APWU) over the ultimate termination, or wrongful discharge.  Although, Plaintiff asserts that her wrongful discharge stemmed from the USPS actions as stated in "Count 1", Wrongful Discharge, #8 - #31 in her complaint.  As a result, the statute of limitations for a "hybrid" suit should not apply to the claim against the USPS for breach of the CBA, when it separated Plaintiff.

In 1962, the Supreme Court relaxed the barrier to individual actions in Smith v. Evening News Association 371 U.S. 195 (1962), ruling that an employee as well as a union could enforce a collective bargaining agreement, ID. at 200.  See 35 FORDHAM L. REV. 517 (1967).  This action is also pursuant to (42 U.S.C. 1981).

Under the Oklahoma Statutes, Title 12, Civil Procedure 12-95, the statute of limitations to file a wrongful discharge under a written contract is within 5 years.

C.  The POStPlan Agreement Does Not Apply

Defendant admitted in their "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss" [Doc. 18, Page 2, first paragraph], that Plaintiff was terminated under the CBA dated May 21, 2015 to September 20, 2018.  Defendant also admits in their Response to Plaintiff's

Interrogatory No.4, that the "Clerk Craft Questions and Answers, Re:

POStPlan, Filling Residual Vacancies, and Travel" signed on 7-29-2016,

was in reference to the Collective Bargaining Agreement dated, May 21,

2015 to September 20, 2018, that was in effect. The CBA dated, May 21,

2015 to September 20, 2018, is effective as of July 8, 2016.

(Ex. 8, "PREAMBLE").  Plaintiff was not separated till July 25, 2016.

Which comes after the effective date of the new CBA dated May 21, 2015

to September 20, 2018.  Under preponderance of the evidence, the

"Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual

Vacancies, and Travel" signed on 7-29-2016, was to be used as further

clarification and guidance for the CBA that Plaintiff was separated under.

And Plaintiff filed grievances after 7-29-2016, which was within the time

limit of 14 days to file.  So Plaintiff was covered under the "Clerk Craft

Q & A, signed on 7-29-2016.  This "Clerk Craft Q & A signed on 7-29-2016

was for clarification and for reference for the CBA that went into effect

on July 8, 2016, which Plaintiff was separated under.  Also, the "Clerk

Craft Q & A, signed on 7-29-2016 did not have an effective date, it was

signed on this date to be used for interpretation of the new CBA that just

went into effect on July 8, 2016.  Plaintiff filed her grievances on 8-2-2016.

## 2. Plaintiff's Assertion of "Fraudulent Misrepresentation" does not Fail to State a Cause of Action (Count 4)

In Plaintiff's complaint, Count 4, #38 and #39, these actions should be considered under fraudulent misrepresentation pursuant to 18 U.S.C. 1001. In United States v. Candella, 487 F.2d 1223 (2d Cir. 1973) cert. denied, 415 U.S. 977 (1974), Candella makes clear that 18 U.S.C. 1001 "does not require that the false statement must actually have been submitted to a department or agency of the United States, but rather that it was contemplated that the statement was to be utilized in a matter which was within the jurisdiction of such department or agency." Id. at 1227. These actions interwined with other counts that lead up to plaintiffs wrongful discharge. Munoz reaffirms not only the proposition that the fraud need not be perpetrated directly on or to the governmental agency involved but also that the term "jurisdiction" in Section 1001 should not be given a narrow or technical meaning. See also Bryson v. United States, 396 U.S. 64 (1969).

## 3. Plaintiff's Title VII and Employment Discrimination Claims Should not be Dismissed for Exhaustion (Counts 5 and 6)

### A. Plaintiff's Claim for Race, Sex, Age Discrimination does not fail, because Plaintiff did Exhaust Administrative Remedies

In assessing the timeliness of Plaintiff's Title VII claims, the courts should consider in Mandel v. M & Q Packaging Corp., No. 11-3913,

Page 22

2013 WL 141890 (3d Cir. Jan. 14, 2013), the District Court determined

that the EEOC questionnaires were sufficiently similar to a charge to

toll the statute of limitations and, therefore her claims would be timely

so long as they occurred within 300 days of December 18, 2018, i.e.,

after Feb. 22, 2018.

Plaintiff was not required to file a formal complaint on Age

Discrimination pursuant to the Age Discrimination in Employment

Act (ADEA) of 1967, as amended, prohibits discrimination in

employment on the basis of age (40 years or older). The ADEA allows

persons claiming age discrimination to go directly to court without

going through an agency's administrative complaint procedures.

See (PS Form 2563-B, Ex. 10, Pg. 8, Ex. 13, Pg. 2).

The court decided that Rule 56 was not the proper vehicle for

challenging exhaustion, especially as the movant in such a challenge

is not seeking a judgment on the merits, but instead resolution of a

condition precedent to suit. Id. See Wyatt v. Terhune, 315 F.3d 1108

(9th Cir. 2003). A Rule 56 motion for summary judgment is not the

proper way to challenge exhaustion. See Sterling v. Warden Hugh

Smith.

> B.  Plaintiff's Claim for Age Discrimination does not fail, because
> Plaintiff DID FILE a Notice of Intent to Sue Letter.

On 10-04-16, Plaintiff faxed to number 202-663-7022, a "Notice of Intent to Sue"

letter to the Office of Federal Operations, as instructed to do on her "Allegations

of Discrimination Based on Age" under section B.  (proof of fax confirmation

from the Wister Library, hereto as Ex. 11).  These copies was also produced

in [Dkt. 17, Ex. 10].

On 12-14-17, Plaintiff faxed to number 202-663-7022, a "Notice of Intent to Sue"

letter to the Office of Federal Operations, as instructed to do on her "Allegations

of Discrimination Based on Age"  under section B.  (proof of fax confirmation

from the Wister Library, hereto as Ex. 14).  Also, a Copy of the (Intent to Sue

letter dated 11-18-17, hereto as Ex. 14).  These copies was also produced

in [Dkt. 17, Ex. 13]

## C.  Plaintiff's Claim for Age Discrimination does not Fail as Plaintiff has Established a "Prima Facie" Case

Pursuit to Title VII of the Civil Rights Act of 1964, intentional and

unintentional discrimination is prohibited.  Plaintiff claims in Count 6

of her complaint a cause of action for disparate-treatment discrimination.

Plaintiff has established evidence of disparaging remarks made by

her employer suggesting stereotypical views about particular racial, sex,

and age.  See e.g., Price Waterhouse v. Hopkins, 490 U.S. 228, 235 (1989)

(presenting strong evidence of  sex stereotyping); James O. Castagnera

& Edward S. Mazurek, Sex Discrimination Based Upon Sexual Stereotyping

53 AM. JUR. TRIALS 26 (2004).  See Plaintiff's Complaint, [Dkt. 1, Pg. 8, #45

and #46].  Also, differential treatment that suggests the employer did not

give her the same chances it gave to other employees.  See e.g., Garrett v.

Hewlett-Packard, 305 F.3d 1210, 1217 (10th Cir. 2002). See Plaintiff's

Complaint, [Dkt. 1, Pg. 8, #41, #46]; [Dkt. 1, Pg. 9, #51].

Plaintiff has established and claimed a "prima facie" case of illegal

discrimination in her complaint [Dkt. 1, Pgs. 9 -10, #54 (A), (B), (C), (D)],

pursuant to Title VII. In his majority opinion in McDonnell Douglas,

Justice Powell, also outlined the requirements for the burden placed on

plaintiff's in Title VII trials, i.e., the initial "prima facie" showing of

discrimination. The plaintiff in such a case must show

1. that he belongs to a racial minority;
2. that he applied and was qualified for a job for which the employer was seeking applicants; (411 US 792, 793)
3. that, despite his qualifications, he was rejected; and
4. that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802.

In Plaintiff's Complaint, Count 6, lines 54 (A), (B), (C), (D), by eliminating

these possible explanations for the adverse action, the plaintiff establishes

that the action was the product of discrimination. See Burdine, 450 U.S.

at 254.

It should be common business practice to pick the best qualified for the

job. When that is not done, a reasonal inference arises that the

employment decision was based on something other than the relative

qualifications of the Plaintiffl. See McCullough v. Real Foods, Inc. 140

F.3d 1123, 1129 (8th Cir. 1998). Defendant does not dispute that Plaintiff

had satisfactory work performance between 7-12-2014 through 5-13-2016. (Defendant's Response to Plaintiff's Request for Admissions, Ex. 2, Pg. 2, Admission No. 5).

   i. Plaintiff's Age Discrimination Claim for Termination Does not Fail

Plaintiff does not have to demonstrate evidence to establish the fourth element of the prima facie case - that she was treated less favorably than others not in the protected class. In McDonnell Douglas, 411 U.S. at 802, the fourth element is: that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

   C. Plaintiff's Claim for Age Discrimination does not Fail as
      Plaintiff has Established a "Prima Facie" Case

In Plaintiff's Complaint, [Dkt. 1, Pg. 9, #54], Plaintiff has demonstrated a "Prima Facie" Case.

Plaintiff has demonstrated that the Defendant's stated reasons for termination were pretextual. Plaintiff's Response on line 28 of this document states:

28. This section is in reference to Defendant's Motion for Summary Judgment, lines 32 - 48. Defendant's reasons of not Hiring/Rehiring Plaintiff are pretext. Reason's made up to look legal and legitimate. They are not the true or correct reasons. Defendant's actions were discriminatory, and Defendant did not have "just cause" for separating plaintiff from her employment. As stated in her complaint, [Dkt.1, Pg. 4, #2], and [Dkt.1, Pg. 6, #26].

Defendant was well aware of their internal behavior of not hiring/rehiring

plaintiff.  Plaintiff was on the "Do Not Rehire" list since her separation.

(See Defendant's Supplement to Plaintiff's First Discovery Requests for

Production of Documents, attached hereto as, Ex. 23, Pgs. 1 - 5).

Defendant running Plaintiff all over the State of Oklahoma for fake and

bogus interviews.  As stated in Plaintiff's Complaint,  lines #96, #97,

#128, #141.

### ii. Plaintiff's Age Discrimination Claims for Non-Selection in Whitesboro, Howe, and Muse do not Fail

Here again, Defendant list the reason's of why Plaintiff could not be hired,

which Plaintiff has already offered evidence to show that the articulated legitimate

nondiscriminatory reasons are pretext.  And not the real reason, or the truth.

Plaintiff was placed on the "Do Not Rehire" list prior to all of the jobs listed in

this section of the Argument.

### RESPONSE TO DEFENDANT'S:  Plaintiff's all Non-Selection's

28.  This section is in reference to Defendant's Motion for Summary Judgment,
lines 32 - 48.  Defendant's reasons of not Hiring/Rehiring Plaintiff are pretext.
Reason's made up to look legal and legitimate.  They are not the true or
correct reasons.  Defendant's actions were discriminatory, and Defendant
did not have "just cause" for separating plaintiff from her employment.
As stated in her complaint, [Dkt.1, Pg. 4, #2], and [Dkt.1, Pg. 6, #26].
Defendant was well aware of their internal behavior of not hiring/rehiring plaintiff.
Plaintiff was on the "Do Not Rehire" list since her separation.  (See Defendant's
Supplement to Plaintiff's First Discovery Requests for Production of Documents,
attached hereto as, Ex. 23, Pgs. 1 - 5).  Defendant running Plaintiff all over the
State of Oklahoma for fake and bogus interviews.  As stated in Plaintiff's
Complaint,  lines #96, #97, #128, #141.

Again, Plaintiff has demonstrated the elements of the "prima facie" case:

Page 27

**C. Plaintiff's Claim for Age Discrimination does not Fail as Plaintiff has Established a "Prima Facie" Case**

Pursuit to Title VII of the Civil Rights Act of 1964, intentional and unintentional discrimination is prohibited. Plaintiff claims in Count 6 of her complaint a cause of action for disparate-treatment discrimination. Plaintiff has established evidence of disparaging remarks made by her employer suggesting stereotypical views about particular racial, sex, and age. See e.g., Price Waterhouse v. Hopkins, 490 U.S. 228, 235 (1989) (presenting strong evidence of sex stereotyping); James O. Castagnera & Edward S. Mazurek, Sex Discrimination Based Upon Sexual Stereotyping 53 AM. JUR. TRIALS 26 (2004). See Plaintiff's Complaint, [Dkt. 1, Pg. 8, #45 and #46]. Also, differential treatment that suggests the employer did not give her the same chances it gave to other employees. See e.g., Garrett v. Hewlett-Packard, 305 F.3d 1210, 1217 (10th Cir. 2002). See Plaintiff's Complaint, [Dkt. 1, Pg. 8, #41, #46]; [Dkt. 1, Pg. 9, #51].

Plaintiff has established and claimed a "prima facie" case of illegal discrimination in her complaint [Dkt. 1, Pgs. 9 -10, #54 (A), (B), (C), (D)], pursuant to Title VII. In his majority opinion in McDonnell Douglas, Justice Powell, also outlined the requirements for the burden placed on plaintiff's in Title VII trials, i.e., the initial "prima facie" showing of discrimination. The plainiff in such a case must show

   1. that he belongs to a racial minority;

2. that he applied and was qualified for a job for which the employer was seeking applicants; (411 US 792, 793)
3. that, despite his qualifications, he was rejected; and
4. that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802.

In Plaintiff's Complaint, Count 6, lines 54 (A), (B), (C), (D), by eliminating

these possible explanations for the adverse action, the plaintiff establishes

that the action was the product of discrimination.  See Burdine, 450 U.S.

at 254.

It should be common business practice to pick the best qualified for the

job.  When that is not done, a reasonal inference arises that the employment

decision was based on something other than the relative qualifications of

the Plaintiffi.  See McCullough v. Real Foods, Inc. 140 F.3d 1123, 1129

(8th Cir. 1998).  Defendant does not dispute that Plaintiff had satisfactory

work performance between 7-12-2014 through 5-13-2016. (Defendant's

Response to Plaintiff's Request for Admissions, Ex. 2, Pg. 2, Admission No. 5)

4. Plaintiff's Claim For Violation of Civil Rights does not fail to
   State a Cause of Action and Should Not Be Dismissed (Count 7)

"Due Process" refers to the steps that the Government must take to

ensure fairness before depriving a citizen of life, liberty, or property,

without due process of law, pursuant to the Fifth Admendment

under the United States Constitution.  See Gilbert v. Homar, 520 U.S.

924,935-36 (1997)(suspension); Cleveland Board of Education v.

Loudermill, 470 U.S. 532,541 (1985)(removal).

In Plaintiff's Complaint, [Dkt. 1, pg. 10, #60], Plaintiff was deprived of due process, when the U.S.P.S. interferred by stating in her separation letter "Since you are a probationary employee, you do not have access to Article 15, Grievance-Arbitration Procedure of the Collective Bargaining Agreement ."  Plaintiff did have access to the Grievance-Arbitration Procedure, but was deprived of the procedure by the U.S.P.S.  Separation letter was inadequate.  This action is also in violation of the United States Codes, (5 U.S.C. 7513-Cause and Procedure.).

Plaintiff is guaranteed full protection of her employment rights and guaranteed an opportunity for a fair hearing on adverse actions with representatives of her own choosing.  Plaintiff did not receive full protection of her employment rights or a fair hearing on her separation, pursuant to the United States Codes, (39 U.S.C. 1001 (b)).

U.S.P.S. authorized and permitted the denial to Plaintiff of the due process of law ewquired by the Constitution, by stating in Plaintiff's separation letter she does not have access to the grievance procedures.  This action is in violation of the United States Codes, (42 U.S.C. 2000e -2 (n)(2)(D)).

### 5. Plaintiff's Claim for "Federal Employment/Hiring Scandal," Count 8, and "Abuse of Discretion," Count 13, Do not Fail to State a Cause of Action and Should not be Dismissed

Plaintiff's Claim for "Federal Employment/Hiring Scandal", (Count 8), does state a cause of action pursuant to Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. 2000e et seq.), (42 U.S.C. 1981), (42 U.S.C. 1988).

Plaintiff's cause of actions (Dkt. 1, Pgs. 11 - 15, #67 - #103).  These actions interwined with other counts that lead up to plaintiff's wrongful discharge.

In Plaintiff's Complaint, [Dkt. 1, Pgs. 11 - 15, #67 - #103] and [Dkt. 1, Pg. 25, #178 - 181] states cause of actions for both counts.  Giving all reasonable inferences to Defendants, the motions for summary judgment are unsupported by the record.

Plaintiff's Claim for "Abuse of Discretion" does state a cause of action pursuant to Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, (29 U.S.C. 151).

Plaintiff's cause of actions (Dkt. 1, Pg. 25, #178 - #181). These actions interwined with other counts that lead up to plaintiff's wrongful discharge.

Plaintiff has exhausted her administrative remedies for the reasons set forth previously in this opposition.  Plaintiff did demonstrate a "prima facie" case set forth previously in this opposition. Plaintiff timely pursue potential remedies for the reasons set forth previously in this opposition.  Plaintiff had demostrated that she was not a probationary employee for the reasons set forth

**Page 31**

previously in this opposition.

Count 8 and 13 should not be dismissed.

35.  Plaintiff was not required to file an informal complaint.

36.  In Plaintiff's Complaint, these actions, [Dkt. 1, Pgs. 16 - 17, #104 - #121],

interwined with other counts that lead up to plaintiff's wrongful discharge.

Theses claims for Harassment/Hostile Work Environment is also in violation

of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, [Dkt. 1, Pg. 2,

Count 5], 42 U.S.C. 2000e et seq., (42 U.S.C. 1981), (42 U.S.C. 1988).  In Plaintiff's

Complaint, Count 9 actions are in violation of (39 U.S.C. 1004).

7.    RESPONSE TO DEFENDANT'S:  Plaintiff's Claim for "Prohibited Personnel
      Practices-Conspiracy-Failure to Rehire/Refuse to Hire," Count 10, and
      "Harmful Procedural Error," Count 11

     It has been demonstrated previously that Plaintiff has a cause of action

for alleged Title VII and CBA violations in this complaint.  Therefore, Count

10 and 11 should not be dimissed on these grounds.

37.  Plaintiff has experienced, while being emloyed at the U.S.P.S., many

prohibited personnel actions that are in violation of the law.  These causes of

actions are in plaintiff's complaint [Dkt. 1, Pgs. 18 - 20, #122 - #130] that

are in violation of the United States Codes, and in violation of Plaintiff's

Title VII of the Civil Rights Act of 1964, as amended.

38.  Plaintiff has experienced internal Conspiracy within the U.S.P.S.,

[Dkt. 1, Pg. 20, #131 - #136] which interwinded with other counts that lead

lead up to plaintiff's wrongful discharge. These claims for "Conspiracy",

are also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, and the United States Codes, (18 U.S.C. 371).

39. In Plaintiff's Complaint, (Dkt.1, Pgs, 21 - 22, #137 - #153), are actions that interwinded with other counts that lead up to plaintiff's wrongful discharge. These cause of actions for "Failure to Rehire/Refuse to Hire" are also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, the United States Codes, and the Codes of Federal Regulations.

40. Defendant committed "Harmful Procedural Error" when it violated the "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel, (Ex. 7). In this Q & A, question 14, states, "Clerk Craft PSE's who have already served one full term as a PSE will not be required to serve a probationary period as required by Article 12, Section 1, after conversion to career." This Q & A was in reference to the Collective Bargaining Agreement, dated May 21, 2015 - September 20, 2018, the only active clerk's agreement at the time it was signed by the United States Postal Service and the American Postal Workers Union, AFL-CIO on 7-29-2016.  [Defendant's Response to Plaintiff's First Discovery Requests, Pg. 3, Interrogatories No. 4].  It was used for clarification, and guidance on issues related to the Clerk Craft, Collective Bargaining Agreement, dated May 21, 2015 - September 20, 2018.

previously in this opposition.

Count 8 and 13 should not be dismissed.

35.  Plaintiff was not required to file an informal complaint.

36.  In Plaintiff's Complaint, these actions, [Dkt. 1, Pgs. 16 - 17, #104 - #121],

interwined with other counts that lead up to plaintiff's wrongful discharge.

Theses claims for Harassment/Hostile Work Environment is also in violation

of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, [Dkt. 1, Pg. 2,

Count 5], 42 U.S.C. 2000e et seq., (42 U.S.C. 1981), (42 U.S.C. 1988).  In Plaintiff's

Complaint, Count 9 actions are in violation of (39 U.S.C. 1004).

7.    RESPONSE TO DEFENDANT'S:  Plaintiff's Claim for "Prohibited Personnel
      Practices-Conspiracy-Failure to Rehire/Refuse to Hire," Count 10, and
      "Harmful Procedural Error," Count 11

    It has been demonstrated previously that Plaintiff has a cause of action

for alleged Title VII and CBA violations in this complaint.  Therefore, Count

10 and 11 should not be dimissed on these grounds.

37.  Plaintiff has experienced, while being emloyed at the U.S.P.S., many

prohibited personnel actions that are in violation of the law.  These causes of

actions are in plaintiff's complaint [Dkt. 1, Pgs. 18 - 20, #122 - #130] that

are in violation of the United States Codes, and in violation of Plaintiff's

Title VII of the Civil Rights Act of 1964, as amended.

38.  Plaintiff has experienced internal Conspiracy within the U.S.P.S.,

[Dkt. 1, Pg. 20, #131 - #136] which interwinded with other counts that lead

lead up to plaintiff's wrongful discharge. These claims for "Conspiracy",

are also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, and the United States Codes, (18 U.S.C. 371).

39.  In Plaintiff's Complaint, (Dkt.1, Pgs, 21 - 22, #137 - #153), are actions that interwinded with other counts that lead up to plaintiff's wrongful discharge.  These cause of actions for "Failure to Rehire/Refuse to Hire" are also in violation of Plaintiff's Title VII of the Civil Rights Act of 1964, as amended, the United States Codes, and the Codes of Federal Regulations.

40.  Defendant committed "Harmful Procedural Error" when it violated the "Clerk Craft Questions and Answers, Re:  POStPlan, Filling Residual Vacancies, and Travel, (Ex. 7).  In this Q & A, question 14, states, "Clerk Craft PSE's who have already served one full term as a PSE will not be required to serve a probationary period as required by Article 12, Section 1, after conversion to career." This Q & A was in reference to the Collective Bargaining Agreement, dated May 21, 2015 - September 20, 2018, the only active clerk's agreement at the time it was signed by the United States Postal Service and the American Postal Workers Union, AFL-CIO on 7-29-2016.  [Defendant's Response to Plaintiff's First Discovery Requests, Pg. 3, Interrogatories No. 4].  It was used for clarification, and guidance on issues related to the Clerk Craft, Collective Bargaining Agreement, dated May 21, 2015 - September 20, 2018.

41. "Harmful Procedural Error's" was also committed in other ways, as stated in Plaintiff's Complaint [Dkt. 1, Pgs. 22 - 24, #154 - #172]. Plaintiff's property interest is in the United States Codes as a government employee pursuant to (39 U.S.C. 1001 (b).

Civil Service employees have a property interest in their continued employment. Therefore, this court has subject matter jurisdiction, over Plaintiff's property interest claim.

## CONCLUSION

WHEREFORE, premises considered, Plaintiff respectfully prays this court denies the Defendant's Motion for Summary Judgment in it's entirety.

Page 36

Respectfully submitted,

*Mary F. Cummings*

Mary F. Cummings, Pro-se
37112 Ruby Rd.
P. O. Box 11
Fanshawe, Ok.  74935
Telephone:  (918) 649-4734
Email address:
cumtommary12@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, a copy of the foregoing

Response to Defendant's Motion for Summary Judgment and

Memorandum in Support Thereof, was served by electronic service

to the United States District Court, Eastern District of Oklahoma, U.S.

Court Clerk's Office, P. O. Box 607, Muskogee, Oklahoma  74402-0607,

and was mailed certified, 7018 2290 0002 2971 5511, to Cheryl Triplett,

520 Denison Avenue, Muskogee, Oklahoma  74401 and mailed

via first class mail to Brian J. Kuester, United States Attorney,

520 Denison Avenue, Muskogee, Oklahoma  74401.

Dated this 7th day of July, 2020

*Mary F. Cummings*

Mary F. Cummings, Pro-Se